**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SCOTT JOHNSON,<br><br>  Plaintiff,<br><br>  v.<br><br>GARLIC FARM TRUCK CENTER LLC,<br><br>  Defendant. | Case No. 20-cv-03871-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF 14] |

In this action, Plaintiff Scott Johnson asserts claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53. *See generally* Compl., ECF 1. Plaintiff seeks injunctive relief along with statutory damages, attorneys' fees, and costs of suit. *Id.*

Defendant Garlic Farm Truck Center LLC ("Garlic Farm Truck Center") failed to answer the complaint or to otherwise appear in this matter. At Mr. Johnson's request, the Clerk of Court entered default as to Garlic Farm Truck Center on August 5, 2020. Entry of Default, ECF 12.

Now before the Court is Mr. Johnson's motion for default judgment ("Motion"). Mot., ECF 14-1. Because Garlic Farm Truck Center has not appeared in this case, there is no notice requirement for either the entry of default or Plaintiff's motion for default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2). However, Mr. Johnson has a provided proof of service showing that the motion for default judgment was served by mail on Garlic Farm Truck Center. *See* Notice of Filing, ECF 15. Garlic Farm Truck Center did not oppose or otherwise respond to the Motion. Briefing on the matter is now closed. Civ. L.R. 7-3(a). The Court previously found the Motion suitable for determination without oral argument. *See* Order Submitting Motion without Oral Argument, ECF 16.

For the reasons discussed below, the Court GRANTS Plaintiff's motion for default judgment.

## I. BACKGROUND

According to his Complaint, Plaintiff is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments. Mr. Johnson alleges that he uses a wheelchair for mobility and has a specially equipped van. Compl. ¶ 1. Defendant Garlic Farm Truck Center is the alleged owner of the parcel of real property where Cruz Tire & Truck Repair is located. Compl. ¶¶ 2, 3, 8.

Mr. Johnson alleges that barriers prevented him from enjoying full and equal access at Cruz Tire & Truck Repair. Specifically, the Complaint alleges that Mr. Johnson visited Cruz Tire & Truck Repair on three occasions: June 2019, October 2019, and January 2020. Compl. ¶ 8. During each of those visits, he says he encountered the following types of access barriers:

(1) Mr. Johnson claims that the parking lot serving Cruz Tire & Truck Repair presents various barriers for people with disabilities. Compl. ¶¶ 11–12. The parking space is not level with the access aisle. See Mot. Ex. 2, Decl. of Scott Johnson ("Johnson Decl.") ¶ 6, ECF 14-4. There is no "NO PARKING" warning on the access aisle. *Id*. There is no ADA signage in front of the parking space reserved for persons with disabilities. *Id*. Furthermore, the lot contains one parking space reserved for persons with disabilities and approximately 28 other spaces. *Id*.

(2) Mr. Johnson also alleges that the entrance door of the business fails to meet ADA standards. Compl. ¶ 12–13. The door has a pull-bar handle that requires a tight grasp to operate. Johnson Decl. ¶ 7.

(3) Mr. Johnson claims that the access ramp leading into the business is deficient. Compl. ¶¶ 14–15. The ramp has a rise that is greater than six inches and is more than six feet in length. Johnson Decl. ¶ 8. Despite this, it has only one handrail. *Id*.

Mr. Johnson pleads that these access barriers caused him "difficulty and discomfort" when he attempted to patronize Cruz Tire & Truck Repair on three occasions. Compl. ¶¶ 8, 18. Mr. Johnson claims that he will return to Cruz Tire & Truck Repair for its goods or services when the access barriers are fixed. *Id*. at ¶ 21.

2

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, who is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, the court may either conduct an evidentiary hearing or proceed on documentary evidence submitted by the plaintiff. *See Fitness Together Franchise Corp. v. C.P. Body Design, Inc.*, No. CV-09-02230-MHM, 2010 WL 11628010, at *4 (D. Ariz. Feb. 24, 2010) ("For cases that have proceeded to default, as this one has, the Court may either conduct an evidentiary hearing, or choose to rely simply on affidavits or other documentary evidence.").

## III. DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court discusses in turn jurisdiction, service of process, the *Eitel* factors, and Plaintiff's requested relief.

### A. Jurisdiction

The Court clearly has subject matter jurisdiction over the suit. Federal question jurisdiction is based on Mr. Johnson's ADA claim for relief. 28 U.S.C. § 1331, and the Court has

1    supplemental jurisdiction over his California Unruh Act claim pursuant to 28 U.S.C. § 1367.

2           This Court also is satisfied that personal jurisdiction exists over Garlic Farm Truck Center.
3    Mr. Johnson provides records indicating that Garlic Farm Truck Center is a California Limited
4    Liability Company. Mot. Exh. 5, Public Rs. 17, ECF 14-7. It thus appears that Garlic Farm Truck
5    Center is subject this Court's general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137
6    (2014) (stating that a corporation's general jurisdiction is its place of incorporation or principal
7    place of business). The records provided by Mr. Johnson also indicate that Garlic Farm Truck
8    Center owns the real property on which Cruz Tire & Truck Repair operates. Mot. Ex. 5, Public Rs.
9    17, ECF 14-7. Garlic Farm Truck Center therefore is subject to this Court's specific personal
10   jurisdiction, as Mr. Johnson's claims arise out of his visits to that property. *See Goodyear Dunlop*
11   *Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (specific jurisdiction lies where the
12   corporation's in-state activity is continuous and systematic and that activity gave rise to the
13   lawsuit).

14       **B.**    **Service of Process**

15          When a plaintiff requests default judgment, the court must assess whether the defendant
16   was properly served with notice of the action. *See, e.g., Solis v. Cardiografix*, No. 12-cv-01485,
17   2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012). Federal Rule of Civil Procedure 4 provides
18   that service may be effected in accordance with state law. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A).
19   Under California law, a corporation or limited liability company can be served by delivering the
20   summons and complaint to one of an enumerated list of individuals, including the designated
21   agent for service of process or the general manager of the entity. *See* Cal. Civ. P. Code 416.10;
22   *Vasic v. Pat. Health, L.L.C.*, No. 13CV849 AJB (MDD), 2013 WL 12076475, at *2 (S.D. Cal.
23   Nov. 26, 2013). In lieu of personal service on such individual, substitute service may be effected
24   "by leaving a copy of the summons and complaint during usual office hours in his or her office . . .
25   with the person who is apparently in charge thereof, and by thereafter mailing a copy of the
26   summons and complaint by first-class mail, postage prepaid to the person to be served at the place
27   where a copy of the summons and complaint were left." Cal. Civ. P. Code § 415.20(a). Thus, "[i]f
28   a defendant is a corporate or noncorporate entity, service may be made in the first instance, in lieu

4

of delivery of process to a specified officer or employee of such entity personally, by leaving the papers in his office." Judicial Council Comm. foll. C.C.P. § 415.20(a).

Mr. Johnson has filed a proof of service indicating that the summons and complaint were served on Garlic Farm Truck Center's agent for service of process, Ashraf Hussain Ali, by substitute service pursuant to § 415.20. *See* Proof of Service, ECF 10. The summons and complaint were left at Mr. Ali's business address (also the address of Garlic Farm Truck Center), 5000 E. 2nd St., Ste. G, Benicia, California, on Friday, June 19, 2020, during normal business hours. *See id.*; Mot. Exh. 5, Public Rs. 17, ECF 14-7. The summons and complaint were left with Mr. Ali's wife, who was authorized to accept them, and thereafter mailed to Mr. Ali at the 5000 E. 2nd St. address. *See* Proof of Service, ECF 10. The Court therefore finds that Garlic Farm Truck Center properly was served with process.[1]

### C.     Eitel Factors

For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default judgment.

#### 1.     Possibility of Prejudice (Factor 1)

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will have no other means of recourse against Garlic Farm Truck Center. As such, there would be prejudice against Mr. Johnson. *See, e.g.*, *Ridola v. Chao*, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (finding that the plaintiff would be prejudiced if default judgment were not entered because she "would have no other means of recourse against Defendants for the damages caused by their conduct").

#### 2.     Merits of Claims and Sufficiency of Complaint (Factors 2 and 3)

Pursuant to the second and third *Eitel* factors, this Court concludes that the Complaint alleges meritorious substantive claims for relief.

---

[1] The Motion states erroneously personal service was effected. *See* Mot. at 5, ECF 14-1. However, it is clear from the documents submitted by Mr. Johnson that substitute service was effected under state law.

5

#### a. ADA Claim

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

##### i. Mr. Johnson's Article III Standing

To establish Article III standing for an ADA claim, Mr. Johnson must demonstrate he suffered an injury in fact, traceable to Garlic Farm Truck Center's conduct, and redressable by a favorable court decision. *See Ridola*, 2018 WL 2287668 at *5 (citing *Hubbard v. Rite Aid Corp*., 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson suffers from a disability within the meaning of the ADA. *See* Johnson Decl. ¶ 2. He alleges that access barriers prevented him from the full and equal enjoyment of services provided by Cruz Tire & Truck Repair, which operates on property owned by Defendant Garlic Farm Truck Center. Specifically, Plaintiff claims deficiencies in the parking space reserved for guests with disabilities, an inaccessible door, and the lack of a second handrail on the access ramp caused him "difficulty and frustration." Johnson Decl. ¶¶ 6-9. Moreover, Mr. Johnson claims that he is deterred from returning to Cruz Tire & Truck Repair because of the alleged barriers. Compl. ¶ 21. A disabled individual suffers a cognizable injury under the ADA "if he is deterred from visiting a non-compliant public accommodation because he has encountered barriers related to his disability there." *Vogel v. Rite Aid Corp*., 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) (quotation marks and citation omitted).

Mr. Johnson's factual allegations are accepted as true, and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged injuries. Accordingly, this Court finds that Mr. Johnson has Article III standing to sue under the ADA.

### ii. ADA Claim Elements

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) Garlic Farm Truck Center is a private entity that owns, leases, or operates a place of public accommodation; and (3) he was denied public accommodation by Garlic Farm Truck Center because of his disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola*, 2018 WL 2287668 at *5 (citations omitted).

Assuming the truth of the complaint's factual allegations, Mr. Johnson has established that he has a disability within the meaning of the ADA. Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). As discussed above, Mr. Johnson is a C-5 quadriplegic who uses a wheelchair for mobility. Compl. ¶ 1. Mr. Johnson further alleges that Garlic Farm Truck Center owns the property on which Cruz Tire & Truck Repair, a place of public accommodation, operates.[2] Compl. ¶¶ 3-4; *see* 42 U.S.C. § 12181(7)(A) (listing a "service establishment" as a place of public accommodation). Mr. Johnson also alleges that during his three visits to Cruz Tire & Truck Repair, he personally encountered access barriers with respect to the parking lot, service ramp, and entrance door. Compl. ¶¶ 8-22.

The Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), found in the ADA's implementing regulations at 28 C.F.R. Part 36, provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). "On March 15, 2012, new federal accessibility standards for alterations and new construction went into effect, known as the 2010 ADA Standards for Accessible Design ('2010 Standards')." *Ridola*,

---

[2] "[T]he ADA imposes concurrent obligations on landlords and tenants, and that a landlord, as an owner of the property, should be liable for ADA compliance even on property leased to, and controlled by, a tenant." *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1264 (9th Cir. 2015).

7

1  2018 WL 2287668 at *7. "Alterations to facilities undertaken after March 15, 2012 must comply

2  with the 2010 Standards." *Id.* Alterations undertaken prior to that date must comply with the 1991

3  Standards. *See id.*

4  Although Mr. Johnson submits public records showing that Garlic Farm Truck Center was

5  constructed prior to March 2012, he asserts violation of the current 2010 Standards rather than of

6  the applicable 1991 Standards. *See* Mot. Ex. 5, Public Rs. 9. However, it is clear from this record

7  that Garlic Farm Truck Center violated the 1991 Standards, as discussed below.

8  Mr. Johnson claims that the single offered van-accessible parking space is deficient due to

9  its slope. The 1991 Standards require that parking spaces and access aisles be level with "surface

10  slopes not exceeding 1:50 (2%) in all directions." 28 C.F.R. Pt. 36, App. A § 4.6.3. Mr. Johnson

11  submits evidence that the slopes exceeded 2%, attaching images of a digital level placed on

12  different parts of the parking space. Johnson Decl. ¶ 6; Mot. Ex. 4, Photos, ECF 14-6. The photos

13  show that various areas of the parking space have slopes in excess of 2%. Mot. Ex. 4, Photos. A

14  slope that runs parallel to the curb in the middle of the access aisle is 2.4°, or 4.2%. *Id.* A slope

15  perpendicular to the curb at the rear portion of the parking space is 5.9°, or 10.3%. *Id.* These

16  slopes are both in excess of the 2% requirement. The Court finds that Mr. Johnson has established

17  a violation of the ADA with respect to the slopes in the parking space and access aisle.

18  Mr. Johnson also claims that the access aisle is not properly marked and thus discourages

19  drivers from parking in the aisle. Johnson Decl. ¶ 6. The 1991 Standards impose no requirement to

20  mark access aisles.[3] Mr. Johnson therefore has failed to establish violation of the ADA with

21  respect to the markings of the access aisle.

22  Mr. Johnson claims that the parking space's ADA signage is not compliant with ADA

23  standards. Johnson Decl. ¶ 6. Parking spaces reserved for people with disabilities must have

24  signage that includes the symbol of accessibility. 28 C.F.R. Pt. 36, App. A § 4.6.4. Mr. Johnson

25  claims that no such signage appears at Cruz Tire & Truck Repair, and attaches photographs

26  showing as much. Johnson Decl. ¶ 6; Mot. Ex. 4, Photos. The Court finds that Mr. Johnson has

---

[3] By contrast, section 502.3.3 of the 2010 Standards requires access aisles to be clearly marked. The 2010 Standards do not apply here.

established a violation of the ADA based on lack of signage.

Under the 1991 Standards, two parking spaces in a 29-space lot must be reserved for guests with disabilities. 28 C.F.R. Pt. 36, App. A § 4.1.2(5)(a). During Mr. Johnson's visits to Cruz Tire & Truck Repair, there was one parking space reserved for people with disabilities and approximately 28 other spaces. *See* Johnson Decl. ¶ 6; *see also* Mot. Ex. 4, Photos. The Court finds that Mr. Johnson has established a violation of the ADA based on the presence of only one parking space reserved for guests with disabilities.

Mr. Johnson also claims that there are issues with the entrance door. The entrance door is "a pull bar style handle that required tight grasping to operate." Johnson Decl. ¶ 7. The 1991 Standards provide: "Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate." 28 C.F.R. Pt. 36, App. A § 4.13.9. Therefore, the Court finds that Mr. Johnson has established a violation of the ADA based on the entrance door.

Mr. Johnson alleges that the access ramp leading to the entrance of Cruz Tire & Truck Repair is deficient. Compl. ¶¶ 14–15. Johnson claims that the ramp is longer than six feet in length and has a rise greater than six inches. Johnson Decl. ¶ 8. Ramps that are more than six feet in length and have a rise above six inches must have two handrails 28 C.F.R. Pt. 36, App. A § 4.8.5. The Court finds that Mr. Johnson has established an ADA violation based on the access ramp.

With respect to the "readily achievable" element of his ADA claim, Mr. Johnson cites *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127 (E.D. Cal. 2007), for the proposition that this is an affirmative defense that is waived unless raised by the defendant. *See* Motion at 10. Mr. Johnson asserts that this affirmative defense has been waived because Garlic Farm Truck Center has not appeared in this matter. *See id*. Mr. Johnson's assertion, which is based on outdated authority, is incorrect. The Ninth Circuit recently decided to follow a burden-shifting framework to determine who bears the burden of proving that removal of an architectural barrier is readily achievable. *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1034-1039 (9th Cir. 2020). Under this burden-shifting analysis, the plaintiff bears the initial burden of plausibly showing that a proposal for removing a barrier is readily achievable, and then the burden shifts to

the defendant with respect to the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable. *See id.*

Applying this burden-shifting framework here, Mr. Johnson has met his initial burden to plausibly show that removal of the identified barriers in the parking lot, entrance door, and access ramp are readily achievable. Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or expense" and that they are "the types of barriers identified by the Department of Justice as presumably readily achievable to [be] remove[d]." Compl. ¶ 20. Additionally, the Complaint alleges that "there are numerous alternative accommodations" to provide people with disabilities a greater level of access even if Defendants could not achieve complete removal of the barriers. *Id.* Those factual allegations are accepted as true on default judgment.

Federal regulations provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible parking spaces," 28 C.F.R. § 36.304(b)(18). Courts have observed that the listed items are "examples of readily achievable steps to remove barriers." *Johnson v. Altimira Corp.*, No. 16-cv-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. 2017). Numerous courts in this district have found allegations similar to Mr. Johnson's sufficient to meet the readily achievable element at the default judgment stage. *See e.g. Johnson v. Shahkarami*, No. 5:20-cv-07263-BLF, 2021 WL 1530940, at *5–6 (N.D. Cal. Apr. 19, 2021), *Johnson v. Cortese*, No. 5:19-cv-02671-EJD, 2020 WL 7495164, at *5–6 (N.D. Cal. Dec. 21, 2020), *Johnson v. Monterey & Rancho Plaza*, No. 18-cv-05718-BLF, 2020 WL 5893319, at *7–8 (N.D. Cal. Oct. 5, 2020).

The burden thus shifts to Garlic Farm Truck Center to show that removal of the identified barriers is not readily achievable. Here, Garlic Farm Truck Center has not defended this action. Thus, Garlic Farm Truck Center has failed to meet its burden.

### b.    Unruh Act Claim

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *MJ Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, Mr. Johnson has a viable Unruh Act Claim based on the barriers identified above.

10

### 3. Amount of Money at Stake (Factor 4)

The fourth *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, 2018 WL 4471073, at *5 (N.D. Cal., Aug. 20, 2018). Mr. Johnson seeks only statutory damages under the Unruh Act. While the sum requested is not insignificant, the Court finds it proportional to the conduct alleged.

### 4. Possibility of Factual Dispute or Excusable Neglect (Factors 5 and 6)

Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether Garlic Farm Truck Center's failure to respond was the result of excusable neglect. *See Love*, 2018 WL 4471073 at *5; *Ridola*, 2018 WL 2287668 at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that indicates a possibility of a dispute as to material facts. Moreover, there is no indication that Garlic Farm Truck Center's default was due to excusable neglect. Garlic Farm Truck Center has not appeared or responded in this action, suggesting that it has chosen not to present a defense in this matter. Accordingly, these factors weigh in favor of default judgment.

### 5. Strong Policy Favoring Decisions on the Merits (Factor 7)

While the Court prefers to decide matters on the merits, Garlic Farm Truck Center's failure to participate in this litigation makes that impossible. *See Ridola*, 2018 2287668 at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment, therefore, is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co. Inc.*, 2017 WL 6994215, at *3 (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

### D. Requested Relief

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, statutory damages, and attorney's fees and costs.

#### 1. Injunctive Relief

Mr. Johnson requests an order directing Garlic Farm Truck Center to "provide wheelchair

11

accessible parking spaces . . . wheelchair accessible door hardware and wheelchair accessible paths of travel leading into the entrance." Mot. 1. Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *MJ Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(h).

"A plaintiff need not satisfy '[t]he standard requirements for equitable relief ... when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Love*, 2018 WL 4471073 at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Thus, injunctive relief is proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668 at *13 (citing *Moreno v. La Curacao*, 463 Fed. Apps. 669, 670 (9th Cir. 2011)).

For the reasons discussed above, Mr. Johnson has done so here. Accordingly, the Court grants Mr. Johnson's request for injunctive relief to bring the parking facilities, entrance door, and access ramp at Cruz Tire & Truck Repair in line with the 2010 ADAAG Standards.[4]

### 2. Statutory Damages

Mr. Johnson seeks statutory damages of $4,000 for each instance of discrimination he encountered at Cruz Tire & Truck Repair. Compl. 7. Since Mr. Johnson visited the business three times, he seeks $12,000 in statutory damages. Mot. 12.

It is unclear why Mr. Johnson repeatedly visited Cruz Tire & Truck Repair when he knew the business was in violation of the ADA. The record does not suggest that Mr. Johnson had reason to expect the access barriers would be remedied between his visits. It thus appears that Mr. Johnson's repeated visits to Cruz Tire & Truck Repair were made in an attempt to increase statutory damages. District courts in the Ninth Circuit have limited statutory damages under the Unruh Act when plaintiffs engage in this behavior. *See e.g. Pickern v. Nord Mkt.*, No. 2:17-CV-

---

[4] The 2010 Standards govern any injunction that the Court issues, as all remedial work will be undertaken after March 15, 2012.

12

1130-JAM-CMK, 2017 WL 6622749, at *4 (E.D. Cal. Dec. 28, 2017) (reducing plaintiff's statutory damages from $16,000 to $8,000 under the Unruh Act because the court could "assume [the plaintiff's] frequent visits were only intended to increase the amount of damages she could receive in such a case"), *Johnson v. Monterey & Rancho Plaza*, No. 18-CV-05718-BLF, 2020 WL 5893319 (N.D. Cal. Oct. 5, 2020) (reducing plaintiff's statutory damages from $16,000 to $4,000 under the Unruh Act because the court could "only assume the multiple visits were intended to increase the amount of statutory damages").

Behavior by Mr. Johnson indicates that his repeated visits are motivated by a desire to increase statutory damages. In *Johnson v. Monterey & Rancho Plaza*, this Court found that the sheer volume of ADA cases litigated by Mr. Johnson and his lawyers in this District indicate that Mr. Johnson is primarily interested in increasing statutory damages. No. 18-CV-05718-BLF, 2020 WL 5893319 at *9 (N.D. Cal. Oct. 5, 2020). By the admission of attorney Dennis Price in November 2019, Mr. Johnson's law firm was simultaneously litigating approximately 5,000 Unruh Act cases across three districts. *Id*. (citing *Johnson v. Baglietto*, No. 19-CV-06206-TSH, 2020 WL 3065939, at *11 (N.D. Cal. May 21, 2020), report and recommendation adopted, No. 19-CV-06206-HSG, 2020 WL 3060902 (N.D. Cal. June 9, 2020)). In Johnson's declaration and in the complaint submitted in support of this case, Mr. Johnson pleads that the access barriers at Cruz Tire & Truck Repair prevented him from returning to patronize the business. Compl. ¶ 21; Johnson Decl. ¶ 11. Nonetheless, Mr. Johnson visited the business three times. *See* Compl. ¶ 8. Mr. Johnson's words and actions are incongruent. This incongruity may suggest that Mr. Johnson's actions are animated by a motive of increasing statutory damages.

The Court, therefore, reduces Mr. Johnson's statutory damages from $12,000 to $4,000.

### 3.     Attorney's Fees and Costs

Mr. Johnson requests $3,896 in attorneys' fees under both the ADA and the Unruh Act. Mot. 15. In support of the fees requested, Mr. Johnson presents detailed billing entries attached to a Russell Handy's Declaration, expert analysis of fees for ADA-plaintiff attorneys by fee experts Richard Pearl and John O'Connor, and a survey report pulled from the Real Rate Report for 2018.

13

1   Mot. 15–18; see Mot. Ex. 1, Decl. of Russell Handy ("Handy Decl."), ECF 14-3; Mot. Ex. 6, Decl.

2   of Richard M. Pearl ("Pearl Decl."), ECF 14-8; Mot. Ex. 7, Real Estate Report, ECF 14-9; Mot.

3   Ex. 8, Decl. of John D. O'Connor ("O'Connor Decl."), ECF 14-10.

4   Further, Mr. Johnson cites four cases from the Northern District of California that have

5   granted attorneys' fees at the hourly rates Mr. Johnson is requesting. Mot. 17, 20. The Court,

6   however, is not persuaded that this evidence justifies the attorneys' fees requested by Mr. Johnson.

### a. Legal Standard

The ADA gives courts the discretion to award attorneys' fees to prevailing parties. *See M.J. Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Additionally, the Unruh Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [Cal. Civ. Code § 52.1(b)], the court may award the petitioner or plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(i).

Whether calculating attorneys' fees under California or federal law, courts follow "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). Under the lodestar method, the most useful starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), abrogated on other grounds by *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id*.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997). The fee applicant bears the burden of producing evidence, other than declarations of interested counsel,

1    that the requested rates are in line with those prevailing in the community for similar services by

2    lawyers of reasonably comparable skill, experience, and reputation. *See Blum*, 465 U.S. at 896

3    n.11. Further, the district court should exclude hours that were not reasonably expended. *See*

4    *Hensley*, 461 U.S. at 434. "[T]he fee applicant bears the burden of establishing entitlement to an

5    award and documenting the appropriate hours expended." *Hensley*, 461 U.S. at 437.

### b.    Rates

7    The Court finds that the rates Mr. Johnson seeks exceed the rates granted in this

8    community for similar work performed by attorneys of comparable skill, experience, and

9    reputation. The relevant community for this action is the Northern District of California. Indeed,

10   for attorneys with approximately 20 or more years of experience, courts in this district have

11   generally approved hourly rates ranging from $350 to $495 in disability cases. *See, e.g.*, *Castillo-*

12   *Antonio v. Lam*, No. 18-cv-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal. Apr. 10, 2019)

13   (approving, on motion for default judgment, $350 hourly rate for attorney with over 20 years of

14   experience); *Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 WL 827640, at *2 (N.D. Cal.

15   Feb. 21, 2019) (approving $350 hourly rate for attorney with 20 years of litigation experience,

16   noting that requested rate was unopposed by defendant and in line with rates approved in Northern

17   District); *Wilson v. Red Robin Int'l, Inc.*, No. 17-cv-00685-BLF, 2018 WL 5982868, at *3 (N.D.

18   Cal. Nov. 14, 2018) (approving $495 hourly rate for attorney with 24 years of experience in civil

19   rights litigation, including 12 years devoted to disability law and $475 hourly rate for attorney

20   with over 17 years of litigation experience and more than 8 years of experience in disability law).

21   Here, Mr. Handy has 20 years of experience, Mr. Potter has 25 years of experience and

22   Ms. Gutierrez has about five years of experience focusing on disability cases. *See* Handy Decl. ¶¶

23   3–6. This Court is mindful of the Ninth Circuit's observation that "[t]he district court's function is

24   to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a

25   particular rate, or to resist a rate because it would be a 'big step.'" *Moreno v. City of Sacramento*,

26   534 F.3d 1106, 1115 (9th Cir. 2008). Mr. Handy and Mr. Potter have recently been granted hourly

27   rate increases, from $425 to $475, in actions representing Mr. Johnson, and Ms. Seabock has

28   recently been granted an hourly rate of $350. *See Johnson v. Oakwood Ctr. LLC*, No. 19-cv-

01582-VKD, 2019 WL 7209040, at *12 (N.D. Cal. Dec. 27, 2019) (denying Mr. Potter and Mr. Handy an hourly rate of $650, instead granting an hourly rate of $475; granting Ms. Seabock an hourly rate of $350); see also *Johnson v. VN Alliance LLC*, No. 18-CV-01372-BLF, 2019 WL 2515749 (N.D. Cal. June 18, 2019) (granting Mr. Potter and Mr. Handy an hourly rate of $425).

In view of the range of rates approved for attorneys practicing in this field, and further recognizing that "decisions pertaining to the same attorneys in question are particularly salient," the Court awards fees for Mr. Handy and Mr. Potter at $475 per hour and for Ms. Seabock at $350 per hour. *See Oakwood Ctr. LLC*, 2019 WL 7209040, at *12. As an attorney who graduated about six years ago and has less than six years of experience litigating disability cases, this Court awards Ms. Gutierrez $250 per hour. *See Johnson v. AutoZone, Inc.*, No. 17-CV-02941-PJH, 2019 WL 2288111, at *7 (N.D. Cal. May 29, 2019) (awarding a $250 hourly fee rate for attorneys who graduated law school between five and eight years ago in a similar ADA case involving Mr. Johnson, who was represented by the same firm in this action).

The Court is not persuaded by Mr. Johnson's cited cases. To support the reasonableness of the hourly rates in the Motion ($650 and $450), Mr. Johnson relies on *In re Linkedin* and *In re Magsafe* as examples of attorneys' rates in the Northern District of California. *See* Mot. 16 (citing *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015), and *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-cv-01911-EJD, 2015 WL 428105, at *11-12 (N.D. Cal. Jan. 30, 2015)). *In re Linkedin* and *In re Magsafe*, however, are both class action suits that do not contain any ADA claims. *See In re Linkedin*, 309 F.R.D. at 580–81; *In re Magsafe*, 2015 WL 428105, at *1. Moreover, the relevant community is only one of the considerations when determining an appropriate hourly rate. Mr. Johnson does not provide any information about the skill, experience, or reputation of the attorneys in either of those cases. Therefore, the Court is not persuaded that the rates awarded in either case are appropriate here.

Next, Mr. Johnson relies on declarations by fee experts Richard Pearl and John O'Connor along with a survey report from the Real Rate Report for 2018. *See* O'Connor Decl.; Pearl Decl.; Real Estate Report. In his declaration, Mr. Pearl's survey of ADA cases shows that attorneys with 20 to 25 years of experience had court-approved rates of between $500 and $675 per hour, while

16

1    attorneys with more than six years of experience had court-approved rates ranging between $350
2    and $425 per hour. Pearl Decl. ¶¶ 9(a)–9(b). Attorneys with less than five years of experience had
3    court-approved rates ranging between $250 and $435 per hour. Pearl Decl. ¶ 9(a). Similarly, the
4    Real Rate Report shows that median rates for partners doing litigation work in San Jose is $675
5    per hour and median rates for associates is $495 per hour. Real Estate Report 016. However, Mr.
6    Pearl's declaration and the Real Rate Report fail to consider the nature of work done and the skill
7    or reputation of the attorneys in each case. As such, the Court is not persuaded that Mr. Pearl's
8    declaration or the Real Rate Report provide a more salient assessment of rates than those
9    previously granted to Mr. Johnson's attorneys.

10   In addition, Mr. O'Connor states in his declaration that reasonable partner fee rates in
11   ADA cases range from $450 to $750 per hour, while an appropriate range for associates is
12   between $350 and $550 per hour. O'Connor Decl. ¶ 33. This is similar to what the Court has
13   awarded to Mr. Johnson's attorneys in this case, and Mr. Johnson does not adequately justify the
14   high ends of the stated rates. "[W]hen a matter 'is a relatively simple one, involving straight-
15   forward application of the law, and which does not present novel or difficult issues requiring a
16   high level of skill or specialization,' courts have generally found that higher rates are
17   unwarranted." *Johnson v. Baglietto*, No. 19-cv-06206-TSH, 2020 WL 3065939, at *11 (N.D. Cal.
18   May 21, 2020) (citing *Oakwood Ctr. LLC*, 2019 WL 7209040, at *13), report and
19   recommendation adopted, No. 19-cv-06206-HSG, 2020 WL 3060902 (N.D. Cal. June 9, 2020).
20   And "[t]he sheer number of ADA cases that [Mr. Johnson's] counsel is litigating [ ] underscores
21   the straightforward nature of their cases." *Id*. (noting that Mr. Johnson's counsel "stated that as of
22   November 7, 2019, [counsel's firm], consisting of 20 lawyers, was simultaneously litigating 'over
23   a thousand' ADA cases in the Northern District of California and approximately 1,500 ADA cases
24   in the Central District of California. The law firm had previously litigated approximately 2,500
25   ADA cases in the Eastern District of California." (internal citations omitted)).

26   Mr. Johnson cites two decisions by another court in this district: *Love v. Rivendell II, Ltd.*,
27   in which the court approved a $650 hourly rate for Mr. Potter and Mr. Handy, and *Johnson v.*
28   *Khalsa*, in which the court approved a $650 hourly rate for Mr. Potter and Mr. Handy and a $450

hourly rate for Ms. Seabock. *See* Mot. 19; *see also* R. & R*., Love v. Rivendell II, Ltd.*, No. 18-cv-03907-JST (EDL) (N.D. Cal. Mar. 11, 2019) ("R. & R*., Love v. Rivendell II, Ltd.*"), ECF 25; Order Adopting R. & R*., Love v. Rivendell II, Ltd.*, No. 18-cv-03907-JST (EDL) (N.D. Cal. Apr. 18, 2019), ECF 30; R. & R., *Johnson v. Khalsa*, No. 4:19-cv-02725-SBA (N.D. Cal. March 24, 2020) ("R. & R., *Johnson v. Khalsa*"), ECF 25; Order Adopting R. & R., *Johnson v. Khalsa*, No. 4:19-cv-02725-SBA (N.D. Cal. April 8, 2020), ECF 26. In both *Rivendell* and *Khalsa*, Mr. Johnson asked for fees as part of a motion for default judgment, and, in part as with his claim here, Mr. Johnson alleged that the defendants failed to provide accessible parking spaces for disabled persons. *See* R. & R., *Johnson v. Khalsa*; R. & R., *Love v. Rivendell II, Ltd.* As other courts in this district recently observed, the *Rivendell* decision relied on cases, such as *Civil Rights Education* and *Rodriguez*, that concerned work that was substantially different than the work performed in the present action. *See*, e.g., Oakwood Ctr. LLC, 2019 WL 7209040, at *11 (granted default judgment in ADA case but distinguished the case from *Civil Rights Education* and *Rodriguez*); *AutoZone*, Inc., 2019 WL 2288111, at *6 n.4 (same). Indeed, *Civil Rights Education* was a complex class action matter involving 54 hotels spread among multiple states and *Rodriguez* involved an ADA claim that included trial and post-trial attorneys' fees. *See Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950, at *1 (N.D. Cal. Mar. 22, 2016); *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268, 1279–80 (N.D. Cal. 2014). And the *Khalsa* decision in awarding attorneys' fees was reached without explicitly relying on any case law. *See* R. & R., *Johnson v. Khalsa*, at 6.

This Court is not persuaded that the rates awarded in *Rivendell* or *Khalsa* are appropriate here. Aside from *Rivendell* and *Khalsa*, Mr. Johnson does not identify any other rulings in which courts have awarded Mr. Johnson fees at the requested rates. *See* Mot. 19. As such, the Court is not persuaded that Mr. Johnson's evidence justifies the rates he is requesting. Additionally, the higher rates are not justified because of the cookie-cutter nature of counsel's filings. In fact, at least two documents submitted here retain the name of a different plaintiff, "Samuel Love," presumably from an unrelated case.

          **c.**      **Hours**

Mr. Johnson requests fees based on 7.7 hours of work. *See* Handy Decl. at 8-9. This Court and other courts in this district have found approximately 11 hours of work to be reasonable for similar cases. *See, e.g.*, *Ridola*, 2018 WL 2287668 at *17 (granted motion for default judgment in ADA case, found 11.1 hours to be reasonable); *VN Alliance LLC*, 2019 WL 2515749, at *8 (granted motion for default judgment in ADA case, found 11.3 hours to be reasonable). Mr. Johnson's billing summary shows 7.7 hours were expended in this litigation: Mr. Potter expended 1.2 hours, Mr. Handy expended 1.8 hours, Ms. Seabock expended 1.5 hours, and Ms. Gutierrez expended 3.2 hours. *See* Handy Decl. at 8-9. Further, the Court has reviewed the itemized statement of Mr. Johnson's counsel's legal work and finds no issue with the amount of time or activities that Mr. Johnson's counsel has conducted. *See* Handy Decl. at 8-9.

In addition, Mr. Johnson requests $885.25 in filing fees and service costs. Mr. Johnson's request for $400 in support of his filing fee is well substantiated. *See* Compl. (confirming receipt number and payment of the $400 filing fee).

Mr. Johnson's other requests are not well-substantiated. Plaintiff quotes the price of Tim Wegman's investigation as $100 in his motion. Mot. 20. In Mr. Handy's declaration, Tim Wegman's investigation is quoted at $400. Handy Decl. 7. There is no receipt for Mr. Wegman's work, so the true cost of the investigation is unclear. Faced with this uncertainty, this Court awards the lesser cost of $100. Additionally, in the motion, Plaintiff quotes the cost of service at $30. Mot. 20. In Mr. Handy's declaration, the service cost is quoted at $100. Handy Decl. at 7. There is no receipt to confirm the true cost of service. This Court awards the lesser cost of $30.

In sum, the Court awards $2,750 in attorneys' fees, comprising 3 hours at a rate of $475 for Mr. Potter and Mr. Handy, 1.5 hours at a rate of $350 for Mr. Seabock, and 3.2 hours at a rate of $250 for Ms. Gutierrez. The Court also awards $530 in costs, for a total award of $3,280 in fees and costs.

//
//
//
//

**IV. ORDER**

For the foregoing reasons, IT IS ORDERED THAT:

(1) Mr. Johnson's motion for default judgment is granted.

(2) Mr. Johnson is awarded statutory damages in the amount of $4,000.

(3) Mr. Johnson is awarded $3,280 in attorneys' fees and costs.

(4) Mr. Johnson is granted an injunction requiring Garlic Farm Truck Center to bring the parking facilities, entrance door, and access ramp at Cruz Tire & Truck Repair in compliance with the 2010 ADAAG Standards.

(5) Mr. Johnson shall promptly serve Garlic Farm Truck Center with this Order and file a proof of service with the Court.

(6) This order terminates ECF 14.

Dated: June 16, 2021

_____
BETH LABSON FREEMAN
United States District Judge